**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

IN RE:
KATASHA CAMPBELL HARRIS
*(Aka Katasha Harris)*
*(Aka Katasha Campbell-Harris)*
        DEBTOR

CASE NO. 16-05470-jw
CHAPTER 13

### AFFIDAVIT IN SUPPORT OF
### MOTION FOR RELIEF FROM AUTOMATIC STAY

          Sonja Manderville

I, _____, declare under penalty of perjury as follows:

    1.     I am employed as a ___Contract Management Coordinator___ of Ocwen Loan Servicing, LLC and

am authorized to sign this affidavit on behalf of Ocwen Loan Servicing, LLC, as servicer for Deutsche

Bank National Trust Company, as Trustee for Ameriquest Mortgage Securities Inc., Quest Trust 2005-

X2, Asset Backed Certificates, Series 2005-X2 (the "Movant"). This Affidavit is provided in support of

the Motion for Relief from Stay (the "Motion") filed contemporaneously herewith.

    2.     I make this affirmation based upon my review of the records with regard to this

underlying loan transaction, which are kept in the ordinary course of business of Ocwen Loan Servicing,

LLC. As part of my job responsibilities for Ocwen Loan Servicing, LLC, I have personal knowledge of

and am familiar with the types of records maintained by Ocwen Loan Servicing, LLC in connection with

the loan that is the subject of the Motion (the "Loan") and the procedures for creating those types of

records. I have access to and have reviewed the books, records and files of Ocwen Loan Servicing, LLC

that pertain to the Loan and extensions of credit given to Debtor(s) concerning the property securing such

Loan.

    3.     The information in this affidavit is taken from Ocwen Loan Servicing, LLC business

records regarding the Loan. The records are: (a) made at or near the time of the occurrence of the matters

recorded by persons with personal knowledge of the information in the business record, or from

information transmitted by persons with personal knowledge; (b) kept in the course of Ocwen Loan

Servicing, LLC regularly conducted business activities; and (c) it is the regular practice of Ocwen Loan

Servicing, LLC to make such records.

    4.   The Debtor(s) aka Katasha D. Campbell Harris and Co-Signer Deandre C. Harris has/have

executed and delivered or is/are otherwise obligated with respect to that certain promissory note

referenced in the Motion (the "Note"). The Debtor(s) aka Katasha D. Campbell Harris and Co-Signer

Deandre C. Harris has/have executed and delivered or is/are otherwise obligated with respect to that

certain Mortgage referenced in the Motion (the "Mortgage"). Pursuant to that certain Mortgage

referenced in the Motion (the Mortgage), all obligations of the Debtor(s) under and with respect to the

Note and the Mortgage are secured by the property referenced in the Motion.

    5.   As of May 3, 2017, there are one or more defaults in paying Debtor(s) post-petition amounts

due with respect to the Note.

    6.    As of May 3, 2017, the unpaid principal balance of the Note is $73,468.09.

    7.    The following chart sets forth those post-petition payments, due pursuant to the terms of

the Note, that have been missed by the Debtor(s) as of May 3, 2017:

| Number of Missed Payments | From | To | Monthly Missed Principal and Interest | Monthly Missed Escrow (if applicable) | Monthly Payment Amount | Total Amounts Delinquent |
|---|---|---|---|---|---|---|
| 4 | February 1, 2017 | May 1, 2017 | $697.22 | $0.00 | $697.22 | $2,788.88 |
| | | | | Less post-petition partial payments (suspense balance): $0.78 | | |

**Total:  $2,788.10****

    8.    As of May 3, 2017, the total post-petition arrearage/delinquency is $2,788.10, consisting

of (i) the foregoing total of missed post-petition payments in the amount of $2,788.10, plus (ii) the

following post-petition fees:

| Description | Amount |
|---|---|
| N/A | N/A |

9.    Attached hereto as an Exhibit 1 is a post-petition payment history.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the

United States of America that the foregoing is true and correct.

Executed this 15th day of May, 201__

_____
Signature

_____
Sonja Manderville
Name

Contract Management Coordinator

_____
Title

**STATE OF FLORIDA**
**COUNTY OF PALM BEACH**
The foregoing instrument was acknowledged before me this 15th day of MAY, 2012, by
Sonja Manderville                    as    Contract Management Coordinator              for Ocwen
Loan Servicing, LLC, who is the servicer for Deutsche Bank National Trust Company, as Trustee for
Ameriquest Mortgage Securities Inc., Quest Trust 2005-X2, Asset Backed Certificates, Series 2005-X2,
who is personally known to me or who has produced _____ as identification.

_____
Signature of Notary Public
Name of Notary Public: _____ **Tucker Perry**

**Personally known:** _____
**OR Produced Identification:** _____
**Type of Identification Produced:** _____

Notary Public State of Florida
Tucker Perry
My Commission FF 224955
Expires 04/28/2019

# Exhibit 1

| Name: | Katasha Campbell Harris | | | | | | |
|---|---|---|---|---|---|---|---|
| **BK Case Number:** | 16-05470-jw | | | | | | |
| **Filing Date:** | 10/31/2016 | | | | | | |
| **Post First Due:** | 12/1/2016 | | | **Completed By:** | kmpraffu | | |
| **Post-Petition Due** | **Date Received** | **Amount Received** | **Amount Applied** | **Suspense Application** | **Suspense Balance** | **Comments** | |
| 12/1/2016 | 1/3/2017 | $ 697.22 | $ 697.22 | $ - | $ - | | |
| 1/1/2017 | 3/3/2017 | $ 698.00 | $ 697.22 | $ 0.78 | $ 0.78 | | |

# Exhibit 1

| Name: | Katasha Campbell Harris |
|---|---|
| BK Case Number: | 16-05470-jw |
| Filing Date: | 10/31/2016 |
| Completed by: | **kmpraffu** |

| Due Date | Total Payment | Principal | Interest | Escrow | Optional Products | NOPC Filed Date |
|---|---|---|---|---|---|---|
| 2/1/2017 | $          697.22 | $  133.95 | $   563.27 | $   - | $   - | |
| 3/1/2017 | $          697.22 | $  134.99 | $   562.23 | $   - | $   - | |
| 4/1/2017 | $          697.22 | $  136.03 | $   561.19 | $   - | $   - | |
| 5/1/2017 | $          697.22 | $  137.08 | $   560.14 | $   - | $   - | |
| **Total Due** | **$          2,788.88** | **$  542.05** | **$ 2,246.83** | **$   -** | **$   -** | |

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) | **CASE NO. 16-05470-jw** |
|  | ) | **CHAPTER 13** |
| **KATASHA CAMPBELL HARRIS** | ) |  |
| *(Aka Katasha Harris)* | ) | **NOTICE OF MOTION FOR RELIEF** |
| *(Aka Katasha Campbell-Harris)* | ) | **FROM AUTOMATIC STAY** |
| **DEBTOR** | ) | **(11 U.S.C. § 362)** |

TO: DEBTOR(S), TRUSTEE (if applicable) AND THOSE NAMED IN THE ATTACHED MOTION:

PLEASE TAKE NOTICE THAT a hearing will be held on the attached Motion on:

<u>**Date:**</u>   **June 27, 2017**
<u>**Time:**</u>  **9:00 AM**
<u>**Place:**</u>  **1100 Laurel Street, Columbia, SC 29201**

Within 14 days after service of the attached Motion, the Notice of Motion, the Movant's Certification of Facts (and a blank Certification of Facts for applicable to service on pro se parties only), any party objecting to the relief sought shall:

1)    File with the Clerk a written objection to the 11 U.S.C. § 362 Motion;

2)    File with the Clerk a Certification of Facts;

3)    Serve on the Movant items 1 & 2 above at the address shown below; and

4)    File a certificate of such with the Clerk.

If you fail to comply with this procedure, you may be denied the opportunity to appear and be heard on this proceeding before the court.

| | |
|---|---|
| DATE OF SERVICE: | <u>May 18, 2017</u> |
| MOVANT: | <u>Ocwen Loan Servicing, LLC as servicer for Deutsche Bank National Trust Company, as Trustee for Ameriquest Mortgage Securities Inc., Quest Trust 2005-X2, Asset Backed Certificates, Series 2005-X2</u> |
| ATTORNEY: | <u>/s/ Travis E. Menk</u> |
| | Travis E. Menk, # 10686 |
| | Brock and Scott, PLLC |
| ATTORNEY'S ADDRESS: | 8757 Red Oak Blvd, Suite 150 |
| | Charlotte, NC 28217 |
| | Phone: (704)369-0676 |
| | scbkr@brockandscott.com |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| | ) | **CASE NO.  16-05470-jw** |
| **IN RE:** | ) | **CHAPTER 13** |
| **KATASHA CAMPBELL HARRIS** | ) | |
| *(Aka Katasha Harris)* | ) | **MOTION FOR RELIEF** |
| *(Aka Katasha Campbell-Harris)* | ) | **FROM AUTOMATIC STAY** |
| **DEBTOR** | ) | **(11 U.S.C. § 362)** |

**MOTION FOR RELIEF FROM AUTOMATIC STAY**

COMES NOW Ocwen Loan Servicing, LLC as servicer for Deutsche Bank National Trust Company, as Trustee for Ameriquest Mortgage Securities Inc., Quest Trust 2005-X2, Asset Backed Certificates, Series 2005-X2 (hereinafter "Movant"), a secured creditor in the above-captioned case, by and through counsel, Brock & Scott, PLLC, and moves this Court to enter an order granting its request for relief from the automatic stay imposed by 11 U.S.C. § 362(a) on the following grounds:

1.    That Ocwen Loan Servicing, LLC as servicer for Deutsche Bank National Trust Company, as Trustee for Ameriquest Mortgage Securities Inc., Quest Trust 2005-X2, Asset Backed Certificates, Series 2005-X2 is a secured creditor of the Debtor(s) and thus a party in interest.

2.    That the above-captioned Debtor(s) filed a petition seeking relief pursuant to Chapter 13 of the United States Bankruptcy Code in this District on or about October 31, 2016.

3.    The Debtor holds title to the real property (hereinafter "Collateral") described in that Mortgage recorded in the Darlington County Register of Deeds in Book 1036 at Page 3547 and recorded on December 2, 2004 (hereinafter "Mortgage") with an address of 1818 Hayfield Road, Darlington, South Carolina 29532.  A copy of the Mortgage and Note are attached hereto and incorporated herein as Exhibit "A".

4.    Movant holds a Promissory Note secured by the Mortgage from the Debtor in the original principal amount of $84,750.00 and dated November 22, 2004 (hereinafter "Note").

5.    Deutsche Bank National Trust Company, as Trustee for Ameriquest Mortgage Securities Inc., Quest Trust 2005-X2, Asset Backed Certificates, Series 2005-X2 has the right to foreclose because: Deutsche Bank National Trust Company, as Trustee for Ameriquest Mortgage Securities Inc., Quest Trust 2005-X2, Asset Backed Certificates, Series 2005-X2, is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan and the promissory note is either made payable to Deutsche Bank National Trust Company, as Trustee for Ameriquest Mortgage Securities Inc., Quest Trust 2005-X2, Asset Backed Certificates, Series 2005-X2  or has been duly endorsed.

6.    The Debtor has scheduled the value of the Collateral at $125,000.00.

7.    Upon information and belief, the approximate payoff due and owing to Movant as of May 3, 2017 is $80,908.63.

8.    The loan is presently in default and is due for the February 1, 2017 post-petition payment.

9.    As a result, Movant lacks adequate protection of its interest in the Collateral. By virtue of such lack of protection, good cause exists to lift the automatic stay imposed hereunder.  Otherwise, Movant will suffer irreparable harm with respect to Movant's interest in the Collateral.

10.    Movant agrees to waive any claim that may arise under 11 U.S.C. Section 503(b) or Section 507(b) as a result of this Order.  Movant further agrees that any funds realized from the foreclosure sale, in excess of all liens, costs, and expenses, will be paid to the Trustee.

WHEREFORE, Movant respectfully requests the entry of an Order:

1.    That modifies the automatic stay provisions of 11 U.S.C. § 362 and that allows Ocwen Loan Servicing, LLC as servicer for Deutsche Bank National Trust Company, as Trustee for Ameriquest Mortgage Securities

Inc., Quest Trust 2005-X2, Asset Backed Certificates, Series 2005-X2 to immediately proceed to foreclose its security interest in the property described in Exhibit "A" annexed to this Motion and otherwise pursue any remedies available under state law to recover and liquidate its collateral; Plaintiff further prays that Ocwen Loan Servicing, LLC, servicer for Deutsche Bank National Trust Company, as Trustee for Ameriquest Mortgage Securities Inc., Quest Trust 2005-X2, Asset Backed Certificates, Series 2005-X2, through its agents, servicers and representatives be permitted to contact Debtor(s) and/or Debtor's counsel for the purpose of engaging in discussions and consideration for possible loss mitigation options, solutions and/or resolutions with regard to the underlying mortgage and note, including, but not limited to loan modification or other loss mitigation alternatives.

2.    That waives the effect of Bankruptcy Rule 4001 (a)(3); and

3.    Provides for such other and further relief as the Court deems just and proper.

This, the 18th day of May 2017.

/s/ Travis E. Menk
Travis E. Menk, # 10686
Brock and Scott, PLLC
8757 Red Oak Blvd, Suite 150
Charlotte, NC 28217
Phone: (704)369-0676
scbkr@brockandscott.com

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | **CASE NO.  16-05470-jw** |
| **KATASHA CAMPBELL HARRIS** | ) | **CHAPTER 13** |
| *(Aka Katasha Harris)* | ) | |
| *(Aka Katasha Campbell-Harris)* | ) | **CERTIFICATION OF FACTS** |
| **DEBTOR** | ) | |

In the above-entitled case, in which Ocwen Loan Servicing, LLC as servicer for Deutsche Bank National Trust Company, as Trustee for Ameriquest Mortgage Securities Inc., Quest Trust 2005-X2, Asset Backed Certificates, Series 2005-X2 from automatic stay provided by 11 U.S.C. § 362, I do hereby certify to the best of my knowledge the following:

1.     <u>Nature of Movant's Interest</u>:  Movant holds the first mortgage on property located at 1818 Hayfield Road, Darlington, South Carolina 29532.

2.     Brief Description of Security Agreement (copy attached):  Mortgage

3.     <u>Description of Property Encumbered by Stay (Include serial number, lot and block number, etc.</u>:

All that certain piece, parcel, or lot of land, situate, lying, anf being in the County of Darlington, State of South Carolina, being shown and designated as Lot No. 40, containig 0.79 acres, more or less,  on that certain Subdivision Plat of Anderson Farm Subdivison, Phase III, being prepared for L. H. Stokes & Son, Inc., dated January 30, 2004, and recorded March 3, 2004, in the Office of the Clerk of Court for Darlington County in Plat Book 197 at Page 131.  Said lot having the following metes and boundaries, to-wit:  on the North by Lot No. 41 on which it measures for a distance of 234.13 feet, more or less; On the East by Hayfield Road 50' R/W on which it measures for a distance of 150.00 feet, more or less; On the South by Lot 39 on which it measures for a distance of 227.52 feet, more or less; and On the West by a reserved area 20' plus 1/2 width of Ditch Private Drainage Easement retained by L. H. Stokes & Son, Inc. on which it measures for a distance of 150.13 feet, more or less.  Reference is given to said plat for a more complete and exact description.

This being the same property conveyed unto Deandre C. Harris and Katasha D. Campbell Harris by Deed of L. H. Stokes & Son, Inc. by its Deed dated November 19,         , 2004, and recorded November         , 2004, in the Office of the Clerk of Court for Darlington County in Deed Book 1030 at Page 3540.

Being split  from TMP#168-00-01-003 and upon the title to Real Estate (deed) being recorded will be issued a individual TMP#.

Property Address: Lot 40, Anderson Farm Subdivision, Darlington County, South Carolina 29532

This will incude a :        2005 Cavalier Series VI Mobile Home 80x32
                                    Serial Number BL05GA0212441AB

4.     <u>Basis for Relief</u>:  Lack of adequate protection. §362(d)(1) and (2).

5.      <u>Prior Adjudication by Other Courts, copy attached (Decree of foreclosure, Order for possession, Levy of execution, etc., if applicable</u>:  N/A

6.      <u>Valuation of Property, copy of Valuation attached</u>:

| | |
|---|---|
| Fair Market Value | $125,000.00 |
| Liens (Mortgages) | $80,582.33 |
| Net Equity | $44,417.67 |
| Source/Basis of Value | Schedule |

7.      <u>Amount of Debtor estimated equity (using figures from paragraph 6)</u>: $44,417.67

8.      <u>Month and Year in which first direct post-petition payment came due to Movant (if applicable)</u>: December 1, 2016

9.      (a) <u>For Movant / Lienholder (if applicable): list or attach a list of all post-petition payments received directly from debtor(s), clearly showing date received, amount and month and year of which each such payment was applied.</u>[1]

        (b) <u>For Objecting party (if applicable): list or attach a list of all post-petition payments included in the Movant's list from (a) above which objecting party disputes as having been made. Attach written proof of such payment(s) or a statement as to why such proof is not available at the time of filing this objection.</u>

10.      <u>Month and year for which post-petition account of Debtor(s) is due as of the date of this Motion</u>: February 1, 2017

Dated: May 18, 2017

                              /s/ Travis E. Menk
                              Travis E. Menk, # 10686
                              Brock and Scott, PLLC
                              8757 Red Oak Blvd, Suite 150
                              Charlotte, NC 28217
                              Phone: (704)369-0676
                              scbkr@brockandscott.com

---

[1]       This requirement may not be met by the attachment of a payment history generated by the Movant. Such attachment may be utilized as a supplement to a complete and detailed response to (9)(a) above, which should be shown on this certification.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| IN RE: | ) | |
| **KATASHA CAMPBELL HARRIS** | ) | **CASE NO.  16-05470-jw** |
| *(Aka Katasha Harris)* | ) | **CHAPTER 13** |
| *(Aka Katasha Campbell-Harris)* | ) | |
| **DEBTOR** | ) | |

**CERTIFICATE OF SERVICE**

        The undersigned hereby certifies under penalty of perjury that he/she is over eighteen (18) years of age and that the MOTION FOR RELIEF FROM AUTOMATIC STAY, NOTICE OF MOTION, CERTIFICATION OF FACTS AND CERTIFICATE OF SERVICE in the above captioned case were this day served upon the below named persons by mailing, postage prepaid, first class mail a copy of such instrument to each person(s), parties, and/or counsel at the addresses shown below:

Katasha Campbell Harris
1814 Lake Wateree Drive
Florence, SC 29501

Eric S. Reed
220 Stoneridge Dr., Suite 301
Columbia, SC 29210

William K. Stephenson, Jr.
PO Box 8477
Columbia, SC 29202

This, the 18th day of May 2017.

                                        Brock and Scott, PLLC

                                        /s/ Julia Vericain
                                        Julia Vericain
                                        Paralegal
                                        8757 Red Oak Blvd, Suite 150
                                        Charlotte, NC 28217
                                        Phone: (704) 369-0676
                                        scbkr@brockandscott.com

Exhibit A

███████ ███████████
P. O. BOX 3892
FLORENCE, SC 29502

███████

Argent Mortgage Company. LLC
P.O. Box 5047 Rolling
Meadows, IL 60008

Prepared By:Argent Mortgage Company. LLC
James Coleman
44 South Broadway. 16th Flr
White Plains. NY 10604

Doc ID: 000356090020 Type: MTG
Recorded: 12/02/2004 at 04:30:31 PM
Fee Amt: $26.00 Page 1 of 20
Darlington County. SC
Scott B. Suggs Clerk of Court
BK **1036** PG**3547-3566**

——————————————————[Space Above This Line For Recording

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated November 22, 2004
together with all Riders to this document.
**(B) "Borrower"** is DEANDRE C. HARRIS and KATASHA D. CAMPBELL HARRIS

Borrower is the mortgagor under this Security Instrument.
**(C) "Lender"** is Argent Mortgage Company. LLC

Lender is a Limited Liability Company
organized and existing under the laws of Delaware

███████████████

SOUTH CAROLINA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3041  1/01

-6(SC) (0005)

Page 1 of 15

Initials: ___

VMP MORTGAGE FORMS - (800)521-7291

11/22/2004 2:22:43

Lender's address is One City Boulevard West  Orange, CA 92868

Lender is the mortgagee under this Security Instrument.

**(D) "Note"** means the promissory note signed by Borrower and dated November 22, 2004
The Note states that Borrower owes Lender eighty-four thousand seven hundred fifty
and 00/100                                                                                    Dollars
(U.S. $84,750.00            ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than December 1, 2034

**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."

**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

**(K) "Escrow Items"** means those items that are described in Section 3.

**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

-6(SC) (0005)                    Page 2 of 15    11/22/2004 2:22:43    Form 3041  1/01

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, the following described property located in the
County                            of                    DARLINGTON                        :
[Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF:

Parcel ID Number: 168-00-01-003P                        which currently has the address of
1818 HAYFIELD ROAD                                                                    [Street]
DARLINGTON                                    [City] , South Carolina 29532            [Zip Code]
("Property Address"):

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this

Initials: ___

-6(SC) (9804).02                        Page 3 of 15        11/22/2004 2:22:43    Form 3041    3/99

Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts



due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a Lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

-6(SC) (89041.02)                Page 5 of 15    11/22/2004 2:22:43    Form 3041    3/99

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with



the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable



-6(SC) (0008)                     Page 7 of 15     11/22/2004 2:22:43     Form 3041   1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**





(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA





requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.



NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence, all of which shall be additional sums secured by this Security Instrument.

23. **Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall release this Security Instrument. Borrower shall by any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Homestead Waiver.** Borrower waives all rights of homestead exemption in the Property to the extent allowed by Applicable Law.

25. **Waiver of Appraisal Rights.** The laws of South Carolina provide that in any real estate foreclosure proceeding a defendant against whom a personal judgment is taken or asked may within 30 days after the sale of the mortgaged property apply to the court for an order of appraisal. The statutory appraisal value as approved by the court would be substituted for the high bid and may decrease the amount of any deficiency owing in connection with the transaction. TO THE EXTENT PERMITTED BY LAW, THE UNDERSIGNED HEREBY WAIVES AND RELINQUISHES THE STATUTORY APPRAISAL RIGHTS WHICH MEANS THE HIGH BID AT THE JUDICIAL FORECLOSURE SALE WILL BE APPLIED TO THE DEBT REGARDLESS OF ANY APPRAISED VALUE OF THE MORTGAGED PROPERTY. This waiver shall not apply so long as the Property is used as a dwelling place as defined in Section 12-37-250 of the South Carolina Code of Laws.

26. **Future Advances.** The lien of this Security Instrument shall secure the existing indebtedness under the Note and any future advances made under this Security Instrument up to 150% of the original principal amount of the Note plus interest thereon, attorneys' fees and court costs.

 -6(SC) (0005)
®

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of

_____          _____ (Seal)
                                            DEANDRE C. HARRIS              -Borrower

_____          _____ (Seal)
                                            KATASHA D. CAMPBELL  HARRIS    -Borrower

_____ (Seal)           _____ (Seal)
                        -Borrower                                         -Borrower

_____ (Seal)           _____ (Seal)
                        -Borrower                                         -Borrower

_____ (Seal)           _____ (Seal)
                        -Borrower                                         -Borrower

 -6(SC) (0006)          Page 14 of 15    11/22/2004 2:22:43  Form 3041  1/01

**STATE OF SOUTH CAROLINA,** _Florence_ **County ss:**

Personally appeared before me _Jennifer L. Dicken_ and made oath that he/she saw the within named Borrower sign, seal, and as his/her/their free act and deed, delivered the within written Mortgage; and that he/she with **Marvin P. Jackson, Jr., Attorney At Law** witnessed the execution thereof.

_Jennifer L. Dicken_
Witness Name

Sworn to before me this _22nd_ day of _November_ _2004_
Day                    Month/Year

My Commission Expires: _2-4-08_

Notary Public for South Carolina
**Marvin P. Jackson, Jr., Attorney At Law**

EXHIBIT "A" LEGAL DESCRIPTION: Deandre C. harris & Katasha D. Campbell Harris
XXXMonthXCalendarXTaxXLotsXXX

　　　All that certain piece, parcel, or lot of land, situate, lying, anf being in the County of Darlington, State of South Carolina, being shown and designated as Lot No. 40, containig 0.79 acres, more or less, on that certain Subdivision Plat of Anderson Farm Subdivison, Phase III, being prepared for L. H. Stokes & Son, Inc., dated January 30, 2004, and recorded March 3, 2004, in the Office of the Clerk of Court for Darlington County in Plat Book 197 at Page 131. Said lot having the following metes and boundaries, to-wit: on the North by Lot No. 41 on which it measures for a distance of 234.13 feet, more or less; On the East by Hayfield Road 50' R/W on which it measures for a distance of 150.00 feet, more or less; On the South by Lot 39 on which it measures for a distance of 227.52 feet, more or less; and On the West by a reserved area 20' plus 1/2 width of Ditch Private Drainage Easement retained by L. H. Stokes & Son, Inc. on which it measures for a distance of 150.13 feet, more or less. Reference is given to said plat for a more complete and exact description.

　　　This being the same property conveyed unto Deandre C. Harris and Katasha D. Campbell Harris by Deed of L. H. Stokes & Son, Inc. by its Deed dated November 19, _____, 2004, and recorded November _____, 2004, in the Office of the Clerk of Court for Darlington County in Deed Book _1030_ at Page _3542_

Being split from TMP#168-00-01-003 and upon the title to Real Estate (deed) being recorded will be issued a individual TMP#.

Property Address: Lot 40, Anderson Farm Subdivision, Darlington County, South Carolina 29532

This will incude a : _____ 2005 Cavalier Series VI Mobile Home 80x32 _____
　　　　　　　　　　　Serial Number ███████████████



Doc ID: 001850030001 Type: MTG
Recorded: 02/17/2009 at 11:08:10 AM
Fee Amt: $6.00 Page 1 of 1
Darlington County, SC
Scott B. Suggs Clerk of Court

BK **1055** PG **7494**



CRL █
Assign
Invest
Custo
Effect

## ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **CITI RESIDENTIAL LENDING INC., AS ATTORNEY-IN-FACT FOR ARGENT MORTGAGE COMPANY, LLC, WHOSE ADDRESS IS 10801 E. 6TH STREET , RANCHO CUCAMONGA, CA 91730, (ASSIGNOR),** by these presents does convey, grant, sell, assign, transfer and set over the described mortgage/deed together with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to **DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR, AMERIQUEST MORTGAGE SECURITIES INC., QUEST TRUST 2005-X2 ASSET BACKED CERTIFICATES, SERIES 2005-X2, UNDER THE POOLING AND SERVICING AGREEMENT DATED SEPTEMBER 1, 2005, WHOSE ADDRESS IS 1761 EAST ST. ANDREW PLACE , SANTA ANA, CA 92705-4934, (ASSIGNEE).**
Said mortgage is made by **DEANDRE C. HARRIS AND KATASHA D. CAMPBELL HARRIS** to **ARGENT MORTGAGE COMPANY, LLC** and recorded 12/02/2004 in the Recorder or Registrar of Deeds of DARLINGTON County, South Carolina in Book 1036 Page 3547 and/or as Document #

dated 01/20/2009
**CITI RESIDENTIAL LENDING INC., AS ATTORNEY-IN-FACT FOR ARGENT MORTGAGE COMPANY, LLC**

By:_____
    **CRYSTAL MOORE VICE PRESIDENT**

**VILMA CASTRO** Witness#1

**DHURATA DOKO** Witness#2

STATE OF FLORIDA COUNTY OF PINELLAS
Before me, the undersigned Notary Public, personally appeared the undersigned witness who, being duly sworn, deposed and said that (s)he saw CRYSTAL MOORE the VICE PRESIDENT sign, seal and deliver the foregoing Assignment of Mortgage and that (s)he, together with the other witness witnessed the execution thereof. SWORN to and subscribed before me THIS 20TH DAY OF JANUARY IN THE YEAR 2009.

**VILMA CASTRO** Witness#1

_____
**BRYAN J. BLY** Notary Public
My commission expires:07/01/2011

Bryan J. Bly
Notary Public, State of Florida
Commission # DD 691055
Expires July 01, 2011
Bonded Through National Notary Assn.

**Document Prepared By:** Jessica Fretwell/NTC,2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

Reviewed and Approved as meeting the South Carolina Code of Laws and Recording Statutes by Biddle Law Firm, P.A., Myrtle Beach, South Carolina.
When Recorded Return To: AMERICAN HOME MTG SERVICING
                                   C/O NTC 2100 Alt. 19 North
                                   Palm Harbor, FL 34683

# FIXED RATE NOTE

| November 22, 2004 | White Plains | NY |
|---|---|---|
| [Date] | [City] | [State] |

### 1818 HAYFIELD ROAD, DARLINGTON, SC 29532
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ **84,750.00** (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is    Argent Mortgage Company, LLC .

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of **9.250 %**.

The interest rate required by this Section 2 is the rate I will pay before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

**(A)  Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on    **January 1, 2005**.

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on    **December 1, 2034**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at:  **505 City Parkway West, Suite 100,  Orange, CA 92868**

or at a different place if required by the Note Holder.

**(B)  Amount of Monthly Payments**

My monthly payments will be in the amount of U.S. $697.22.

**4. BORROWER'S RIGHT TO PREPAY**

I may repay this Note at any time without a penalty.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then; (i) any such loan charged shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)  Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of  **fifteen**  calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  **5.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B)  Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)  Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed me.

Initials: _KCH_

200-16C (Rev. 10/00)                                                11/22/2004 2:22:43 PM

**(D)   No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)   Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

**7.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to Pay all of the amounts owed under this Note.

**9.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.   UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if prohibited by federal law as of the date of this Security Instrument.

If the Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
Borrower:   DEANDRE C. HARRIS
SSN:   ▪▪▪▪▪▪▪▪

_____ (Seal)
Borrower:   KATASHA D. CAMPBELL HARRIS
SSN:   ▪▪▪▪▪▪▪▪

_____ (Seal)
Borrower:
SSN:

_____ (Seal)
Borrower:
SSN:

PAY TO THE ORDER OF
AMERIQUEST MORTGAGE COMPANY

WITHOUT RECOURSE
ARGENT MORTGAGE COMPANY, LLC

BY: _____
WAYNE LEE, PRESIDENT

BY: _____
JOHN P. GRAZER, E.V.P./C.F.O.

PAY TO THE ORDER OF

WITHOUT RECOURSE
AMERIQUEST MORTGAGE COMPANY

BY: _____
WAYNE LEE, President/C.E.O.

BY: _____
KAREN CHRISTENSEN, C.F.O.

200-28C (Rev. 10/00)          2 of 2          11/22/2004 2:22:43 PM